UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| EDDIE VAUGHANS, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | No. 3:09 CV 370 |
| DAWN NELSON, *et al.*, | ) ) |  |
| Defendants. | ) |  |

## OPINION AND ORDER

Eddie Vaughans, a prisoner confined at the Indiana State Prison ("ISP"), filed a complaint pursuant to 42 U.S.C. § 1983, alleging that he "has a chronic illness that has him bleeding when the proper medication is not given to him, (ulcestive colitis)," but that ISP officials "stopped giving him his medication." (DE #1 at 3.) The court screened the complaint pursuant to 28 U.S.C. § 1915A, and allowed Vaughans leave to proceed against Dr. Michael Mitcheff M.D., on the claim that Dr. Mitcheff was deliberately indifferent to Vaughan's serious medical needs. (DE #6 at 6.) Vaughans alleged that Dr. Gerald Myers, M.D., his treating physician at the ISP prescribed medication and a treatment plan for Vaughans but that Dr. Mitcheff, the regional medical director, discontinued this medication. (DE #1 at 8.) He also alleges that Dr. Mitcheff failed to send him to the hospital for an approved diagnostic test. (DE #1 at 4.)

Dr. Mitcheff has filed a motion for summary judgment pursuant to FED. R. CIV. P. 56, and the Plaintiff has responded. The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. *Outlaw v. Newkirk*, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotation marks, ellipsis omitted).

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities; and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991). In medical cases, the Eighth Amendment test is expressed in

terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

> For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.

*Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted).

In support of his summary judgment motion, Dr. Mitcheff submits his own affidavit, the affidavit of Dr. Myers, portions of plaintiff Vaughans' medical records and Vaughans' responses to interrogatories. In response, Vaughans submits the affidavit of fellow inmate Samuel Gutierrez.

The events Vaughans complains of occurred between August 2007 and August 2009. (DE # 1 at 6.) The parties' submissions establish that Vaughans was transferred to the Indiana State Prison in 2005. (DE #39-3 at ¶ 3.) Until August 2006, Dr. Mitcheff was Vaughans' treating physician, and treated him for inflammatory bowel disease with Asacol (Mesalamine) as well as Zantac, Tums, Metamucil, Boost, and a high protein diet. (DE #39-3 at ¶ 3.) But in August, 2006, Dr. Mitcheff left the ISP and became the Regional Medical Director for Correctional Medical Services, Inc. (DE #39-3 at ¶ 5.) As Regional Medical Director, Dr. Mitcheff does not treat inmates at the ISP, and he never again treated Vaughans. (DE #39-3 at ¶ 6.)

Dr. Myers became Vaughans's treating physician, and remained his treating physician until January 2011. (DE #39-4 at ¶ 5.) If a physician at the ISP requests a

specific medication for an inmate and the Regional Medical Director thinks that another medication may be suitable, he may recommend the alternative medication, but the treating physician can still prescribe any medication he feels is medically necessary for the patient. (DE #39-3 at ¶ 6.)

From August 2006 to April 2009, Dr. Myers treated Vaughans' stomach condition with Asacol. (DE #39-3 at ¶ 8.) On January 30, 2009, Dr. Myers saw Vaughans and submitted a non-formulary exception request for renewal of Asacol, but the Assistant Regional Medical Director, Dr. Michael Person, recommended Colazol rather than Asacol. (DE #39-3 at ¶ 9.) Colazol is a more expensive medication than Asacol, but has fewer side effects. (DE #39-3 at ¶ 9.) Dr. Mitcheff did not receive or review the January 30, 2009, request from Dr. Myers, nor did he tell Dr. Myers to switch Vaughans' medication from Asacol to Colazol. (DE #39-3 at ¶ 9.)

Dr. Myers placed Vaughans on Colazol, but on May 14, 2009, he noted that Vaughans had been miserable since switching from Asacol to Colazol. (DE #39-5 at 92-93.) On July 10 and 12, 2009, Dr. Myers submitted a formulary exception request for Asacol to replace the Colazol. (DE #39-5 at 101-108.) Dr. Mitcheff received and reviewed this request and agreed with Dr. Myers' request to switch Vaughans from Colazol back to Asacol. (DE #39-3 at ¶ 11.)

Dr. Myers states in his affidavit that Dr. Mitcheff never instructed him to prescribe Colazol rather than Asacol for Vaughans's ulcerative colitis. (DE #39-4 at ¶ 10.) When Dr. Myers prescribed Colazol rather than Asacol for Vaughans, he did so because the Assistant Regional Medical Director, Dr. Person, suggested Colazol as an

4

alternative, and Dr. Myers decided to try that medication to see if it worked better for Vaughans. When Vaughans complained that the Colazol made his condition worse, Dr. Myers switched him back to Asacol. (DE #39-4 at ¶ 10.) The only time Vaughans did not receive Asacol was from April 27, 2009, until July 13, 2009, when Dr. Myers wanted him to try Colazol instead. (DE #39-4 at ¶ 11.)

Dr. Myers also states in his affidavit that when he determined that Vaughans needed to go to Wishard Hospital to see a specialist for his stomach condition or undergo testing, Dr. Mitcheff had no control over when that appointment would be scheduled or whether Vaughans was actually sent for that appointment. (DE #39-4 at ¶ 12.) When Dr. Myers recommended that Vaughans go to Wishard Hospital, Dr. Mitcheff did not prevent Vaughans from going, and he never told Dr. Myers not to send Vaughans to Wishard. (DE #39-4 at ¶ 12.)

Dr. Mitcheff argues that he "is entitled to summary judgment because he was not personally involved in Vaughans' medical care during the period relevant to Vaughans' allegations and because he did not prevent Vaughans from getting needed medication or going to Wishard Hospital. It is well-established that deliberate indifference to a serious medical need cannot be established based on the theory of *respondeat superior*. *Chaves v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). To recover damages under § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right. *Chavez*, 251 F.3d at 651; *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). The personal responsibility requirement is satisfied "if the official acts or fails

to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). "Only persons who cause or participate in the [Constitutional] violations are responsible." *George v. Smith*, 507 F. 3d 605, 609 (7th Cir. 2007). A plaintiff must establish facts showing a defendant's participation or direct responsibility for the conditions of which he complains. *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996).

Because Dr. Mitcheff met his initial obligation under FED. R. CIV. P. 56, the burden shifts to Vaughans to come forth with evidence sufficient, if viewed as fully in his favor as is reasonable, to allow a factfinder to decide in his favor the question of whether Dr. Mitcheff was personally involved in his treatment during the period covered by the complaint and was responsible for the denial of medical attention Vaughans complains of. *Celotex*, 477 U.S. at 323.

Vaughans submits the affidavit of Samuel Gutierrez, in which Gutierrez states that he has assisted Vaughans with filing grievances, that he has helped Vaughans on several occasions where he "vomited until he was too weak to walk on his own" (DE # 43-1 at 2), that he alerted correctional officers that Vaughans needed to go to the hospital, and that he "witnessed other Staff Members 'check' on Vaughans to see how he was doing . . ." (DE # 43-1 at 2.) Gutierrez's affidavit helps confirm that Vaughans has a serious medical need, and has had serious and painful complications from his medical problems: which Dr. Mitcheff does not contest, and which the Court accepts as true. But his affidavit does not connect Dr. Mitcheff with any denial of medical

6

treatment to Vaughans or suggest that Dr. Mitcheff was deliberately indifferent to Vaughans' serious medical needs.

In his memorandum in opposition to Dr. Mitcheff's motion for summary judgment, Vaughans argues that "where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment **must be denied** even if no opposing evidentiary matter is presented." (DE 42-1 at 3) (emphasis in original.) But Dr. Mitcheff's submissions are sufficient to establish a lack of personal involvement on his part in the events Vaughans complains of, and a lack of deliberate indifference to Vaughans' serious medical needs. Accordingly, without evidence contradicting Dr. Mitcheff's submissions, Dr. Mitcheff is entitled to summary judgment. *Celotex v. Catrett*, 477 U.S. at 322-23.

For the foregoing reasons, the court **GRANTS** defendant Dr. Mitcheff's motion for summary judgment (DE # 36), and **DIRECTS** the clerk to enter judgment in favor of Dr. Mitcheff and against plaintiff Vaughans.

                              **SO ORDERED.**

Date: July 27, 2011

                                    s/James T. Moody
                                    JUDGE JAMES T. MOODY
                                    UNITED STATES DISTRICT COURT